UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

WAFA ABBOUD,

Defendant.

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

16-cr-396 (ERK)

KORMAN, *J*.:

From 2010 to May 27, 2016, Wafa Abboud was the executive director of Human First, Inc.—a New York non-profit that provided educational, behavioral, recreational, and other services to individuals with autism and other developmental disabilities. In February 2016, Abboud was arrested and charged with taking part in a conspiracy to embezzle and launder Human First funds through shell companies that were then used to funnel the funds back to Abboud and her co-conspirators. *See* ECF No. 1. The complaint also alleged that Abboud had committed bank fraud by lying about the source of the funds that she used to pay the down payment on her $1.3 million residence in order to secure a mortgage for that residence. ECF No. 1 ¶¶ 26–31. Abboud was eventually indicted on seven offenses: four counts related to her embezzlement of Human First funds, one count of bank fraud, one count of conspiracy to commit bank fraud, and one count of engaging in an unlawful

1

monetary transaction—using Human First funds to pay the down payment on her house. ECF No. 70.

Abboud proceeded to trial. Just before the trial, Abboud's lawyers filed a motion in limine seeking to preclude the United States Attorney from introducing evidence of a second mortgage that Abboud obtained from a different bank and did not disclose to the bank that provided her with her first mortgage. *See* ECF No. 135. In this motion, Abboud's lawyer argued that the probative value of the evidence would be minimal because, as would become clear after his opening statement, Abboud was not going to dispute at trial that she had submitted false documents to secure the first mortgage. ECF No. 135 at 4–5. In the preliminary arguments on this motion, Abboud's attorney reiterated—with Abboud present—their argument that this evidence was not "particularly probative" because they would not be "challenging the issues, the facts relating to the providing false information to the mortgage company to obtain the mortgage." Trial Tr. at 5; *see* ECF No. 222 at 8.

Trial began on June 26, 2019. True to his word, Abboud's trial counsel indicated in his opening statement that Abboud was going to concede to the bank fraud count. He told the jury that they would "agree to some of the bad acts that [Abboud] ha[d] done." Trial Tr. at 25. He admitted that "Abboud lied [to the bank] about her relationship with" her co-conspirators and that "she lied about whether the loan was really a gift and about the existence of another deal." Trial Tr. at 25–26.

These concessions in essence admitted Abboud's guilt to the substantive bank fraud count—count six—which required the United States Attorney to prove that Abboud "knowingly execute[d] . . . a scheme or artifice . . . to obtain any of the moneys . . . under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. 1344(2); *see* Trial Tr. at 1337–42.

On July 1, 2019, the United States Attorney moved to admit evidence of a fraudulent scheme that Abboud had engaged in with one of her co-conspirators as direct evidence of the charged crimes and to rebut Abboud's argument that she was not aware of this co-conspirator's criminal activity. *See* ECF No. 141. Abboud's trial counsel opposed this motion. Because this co-conspirator participated in Abboud's false representations to secure her mortgage, counsel informed the court, in Abboud's presence, that this evidence had limited probative value because they had "admitted to the, most of the facts of the [bank fraud or] mortgage count and [they were] going to admit to the guilt of the mortgage count during closing arguments." Trial Tr. at 1058; *see* ECF No. 222 at 9–10.

Throughout the trial, it was unclear whether Abboud would testify in her defense. Early on, trial counsel told the court that "Abboud may be testifying." Trial Tr. at 473. On July 2, when the United States Attorney's case was coming to a close, Abboud's trial counsel stated that he had "indicated to the Government that [he]

3

would let them know sometime over the weekend whether [] Abboud [wa]s testifying or not." Trial Tr. at 947. On July 8, the first day of trial following the long weekend, the United States Attorney rested its case. Trial Tr. at 1095. Abboud's counsel called two witnesses but Abboud herself did not take the stand. Trial Tr. at 1098–1165. After the last witness, I asked Abboud's counsel, in Abboud's presence, if they were "finished with witnesses." Trial Tr. at 1166. Trial counsel responded that they were. *Id.* After an hour-and-ten-minute lunch break, Abboud's counsel introduced certain stipulations and then rested. Trial Tr. at 1169, 1172. After the prosecutor summed up, Abboud's trial counsel told the jury in his summation that "Abboud committed the offense of mortgage fraud or bank fraud in supplying documents that were not accurate to [the bank] in order for her to get a mortgage" and that Abboud "committed fraud with the mortgage people." Trial Tr. at 1233, 1265. After the Assistant United States Attorney gave his rebuttal, the trial was adjourned for the day. Trial Tr. at 1287–88.

On the morning of July 9, 2019, I received a letter from Abboud. *See* ECF No. 145. In the letter, Abboud claimed that she had been "misrepresented in the trial." *Id.* She alleged that she "never agreed to admit Guilt to any of the charges including the mortgage fraud counts." *Id.* She also stated that she had "requested to testify to clear and explain many of the issues on the other charges, [but her] lawyer wouldn't

4

agree, and finally [she] was told that [she would] be asked by [the judge] if [she] want[ed] to testify then [she would] have [a] Chance to say yes or no." *Id.*

I addressed the contents of the letter with Abboud and her attorneys. While her attorneys said that they did discuss the issue of admitting guilt for the bank fraud counts, Abboud alleged that they had not obtained her consent to concede guilt to the bank fraud counts. Trial Tr. at 1291–96. As to Abboud's claim that counsel had denied her an opportunity to testify, counsel stated that they had "had numerous discussions about whether or not [] Abboud would testify throughout the pretrial period." Trial Tr. at 1298. The final conversation had taken place the Sunday prior. *Id.* Abboud had initially said that day that she wanted to testify, but, after both of her attorneys advised against it, "she agreed not to testify." Trial Tr. at 1298–99. After that conversation, counsel had informed the United States Attorney that there was still a possibility that Abboud "would change her mind," but she never "indicate[d] that she changed her mind and wanted to testify." Trial Tr. at 1299.

Because both parties had already rested their case and given their summations, I decided to let the trial proceed without Abboud testifying. *Id.* I informed Abboud that I would appoint a different lawyer for her to "make a motion to set aside the verdict based on whatever grounds he thinks is appropriate in light of what [she] said." *Id.* I proceeded to instruct the jury and leave them to their deliberations. That same day, the jury found Abboud guilty on all counts. ECF No. 159.

5

On July 10, 2019, Abboud moved for a new trial. ECF No. 150. In her memorandum in support of this motion, she argued that trial counsel violated her Sixth Amendment "right to autonomy" by conceding guilt on the bank fraud counts without her approval. ECF No. 202 at 10–13. She also argued that trial counsel had violated her right to testify. *Id.* at 13–18. She alleged that these errors were "structural" and thus necessitated a new trial. *Id.* at 19.

On March 31, 2022, a hearing was held on this motion. Abboud testified that, while she had agreed to conceding guilt on the bank fraud counts as part of plea negotiations, she had never agreed to conceding guilt on those counts at trial. ECF No. 223 at 7. Abboud also testified that she had, on multiple occasions throughout the trial, told her attorneys that she wished to testify. *Id.* at 8, 23, 27. She stated that it was not until the weekend before the defense was to put on its case that her lawyers told her that she should not testify. *Id.* at 9. She described how she argued with them repeatedly and eventually left because she felt she had no alternative. *Id.* at 9–10. Nevertheless, she believed that she still had the opportunity to testify because they had told her that the judge was going to ask her at the end of the trial whether she wanted to testify. *Id.* at 10. When the defense closed its case without me asking her if she wanted to testify, she did not know what to do. *Id.* at 10–11. Thus, she went home and wrote a letter to me. *Id.* at 11.

Both of Abboud's trial lawyers testified at the hearing. Samuel Schmidt testified that he explained to Abboud that they were going to concede the bank fraud counts as part of the trial strategy—though he did not remember if she ever explicitly agreed to this. *Id.* at 51–53. Andrew Bernstein testified that he personally discussed with Abboud that "Schmidt would essentially concede guilt to the mortgage fraud counts at closing argument" and that she expressly agreed with that approach. *Id.* at 67–68. Both lawyers testified that they had had many discussions with Abboud about her right to testify at trial and that she understood her rights. *Id.* at 53, 70. Indeed, Bernstein prepared Abboud to testify at trial. *Id.* at 65, 70–71. Yet over time it became clear to both of Abboud's attorneys that it was not in her best interest to testify. *Id.* at 54, 70–72. The weekend before the defense was to present its case, both lawyers told Abboud that she should not testify. *Id.* at 55, 73. They explained that they could get out the information "she really wanted to place in front of the jury . . . through other means." *Id.* at 55. And they expressed concern that her testimony would contradict what they "believed was indisputable evidence," as well as statements they had made in the opening. *Id.*; *see id.* at 73–74. Because they believed that testifying would significantly hurt Abboud's credibility, they strongly recommended against it. *Id.* at 55–56. However, they told Abboud that it was ultimately her decision whether to testify. *Id.* at 56, 74. By the end of this discussion, Abboud agreed not to testify. *Id.* at 73.

Because Abboud's attorneys had agreed to inform the United States Attorney "as a courtesy . . . of whether [Abboud] was going to testify on Monday," Bernstein emailed the United States Attorney after Abboud left "a rough chart of the chances of [] Abboud testifying on Monday morning." *Id.* at 57–58, 76. The chart showed that Abboud had changed her mind from initially wanting to testify to agreeing not to testify. *Id.* at 59. However, the chart placed a question mark at the end because Abboud's lawyers believed "because of who [] Abboud is and what she had said previously and how she ha[d] changed her mind" that "there was always a possibility she would come in here and decide that she wanted to testify." *Id.*; *see id.* at 76–77.

According to the attorneys' testimony, Abboud did not tell her lawyers that she wanted to testify until after they had rested her case. After the prosecution summed up and in the midst of Schmidt's summation, she told Bernstein that she wished to testify. *Id.* at 77. Bernstein told her to wait until after the summation to discuss it, but he did not believe at that point that she could testify "absent a mistrial." *Id.* at 78–79. After summations were over, Bernstein informed Abboud that she had lost the opportunity to testify by not asking earlier. *Id.* at 79.

After the hearing, the United States Attorney responded to Abboud's motion and Abboud replied. *See* ECF Nos. 222; 224. I now resolve this motion.

## DISCUSSION

I.     **Concession of Guilt to the Bank Fraud Counts**

8

Abboud argues that a new trial is warranted because her attorneys violated her Sixth Amendment rights by conceding guilt to the bank fraud counts without her permission. The Sixth Amendment protects a defendant's right to personal autonomy. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1511 (2018); *Faretta v. California*, 422 U.S. 806, 818–21 (1975). Even when a defendant elects to be represented, the defendant "does not 'surrender control entirely to counsel.'" *United States v. Rosemond*, 958 F.3d 111, 119 (2d Cir. 2020) (quoting *McCoy*, 138 S. Ct. at 1508). The defendant still has the right to decide "that the objective of the defense is to assert innocence." *McCoy*, 138 S. Ct. at 1508. Thus, "[w]hen a client expressly asserts that the objective of '[*her*] defense' is to maintain innocence of the charged criminal acts, [her] lawyer must abide by that objective and may not override it by conceding guilt." *Id.* at 1509 (italics in original).

But the defendant must timely assert her right to maintain her innocence before her choice can be protected by the Sixth Amendment. While "an attorney must both consult with the defendant and obtain [her] consent" before deciding whether the defendant will "plead guilty, waive a jury, testify [o]n . . . her own behalf, or take an appeal," an attorney does not need "the defendant's explicit consent" to concede guilt to a charged offense. *Florida v. Nixon*, 543 U.S. 175, 187, 192 (2004). If "counsel informs the defendant of the strategy" to concede guilty "and the defendant is unresponsive," counsel does not violate the defendant's Sixth

9

Amendment rights by proceeding with that strategy. *Id.* at 192; *see also McCoy*, 138 S. Ct. at 1509 ("If a client declines to participate in his defense, then an attorney may permissibly guide the defendant pursuant to the strategy she believes to be in the defendant's best interest."). The Sixth Amendment violation arises only when the client expressly states her "will to maintain innocence." *McCoy*, 138 S. Ct. at 1509. Thus, to succeed on her claim that counsel violated her Sixth Amendment rights by conceding her guilt to the bank fraud counts, Abboud must show that she expressly asserted her decision not to concede guilt and that her lawyers "over[o]de" that decision. *McCoy*, 138 S. Ct. at 1509. *Cf. Dean v. Superintendent, Clinton Corr. Facility*, 93 F.3d 58 (2d Cir. 1996) ("[A] petitioner claiming ineffective assistance of counsel based on counsel's imposition of an insanity defense over petitioner's objection bears the burden of showing that he in fact objected.").

Even though Abboud's lawyers did not need to obtain Abboud's express consent before conceding guilt to the bank fraud counts, they still needed to discuss that decision with her. *See Nixon*, 543 U.S. at 187. Abboud testified that her lawyers discussed the strategy of conceding the bank fraud counts in the context of the plea negotiations—but that they did not tell her that they planned to concede guilt to the bank fraud counts until "[t]wo minutes before the opening statement." ECF No. 223 at 7. This testimony was flatly contradicted by both of Abboud's attorneys, who stated that they did discuss conceding guilt to the bank fraud counts as part of the

10

trial strategy.[1] *Id.* at 51–53, 67–68. It is also contradicted by the record, which shows that Abboud's attorney informed me, with Abboud present, prior to the trial that they would not be "challenging the issues, the facts relating to the providing false information to the mortgage company to obtain the mortgage." Trial Tr. at 5; *see* ECF No. 222 at 8. Thus, I find that Abboud's attorneys did adequately consult with Abboud before admitting her guilt to bank fraud.

In any case, even if Abboud did not find out until the morning of trial that her lawyers were going to concede guilt to the bank fraud counts, she would have had to clearly express her disagreement with this strategy before her Sixth Amendment rights could have been violated. At the hearing on this motion, Abboud testified that she disagreed with the plan to concede to bank fraud, but she did not testify that she expressed this disagreement to her attorneys. ECF No. 223 at 7. In her declaration, Abboud states that she "objected" to conceding guilt to bank fraud but that counsel did "not consider [her] objection" and instead told her that she "could explain what happened" when she testified. ECF No. 202-1 ¶ 1. She alleges that when she asked

---

[1] It was sensible for Abboud's attorneys to concede her guilt to the bank fraud counts because the evidence against her on those counts was overwhelming and because the United States Sentencing Guidelines range was low on those counts. ECF No. 223 at 50–52, 87–91. In the case of a fraudulent mortgage loan, the Guidelines reduce the loss amount by the fair market value of the collateral. *See* Application Note 3(E)(iii) to U.S.S.G. § 2B1.1. Thus, Abboud's attorneys could reasonably have assumed that the Guidelines would apply a loss value of zero to the bank fraud counts because the value of her property was greater than the amount of the fraudulent mortgage. ECF No. 222 at 26, n.9. This would have produced an offense level of seven with a corresponding Guidelines range of zero to six months. *Id.*

11

her attorneys later that day why they had conceded to bank fraud, they told her that "they knew what they were doing" and she replied that she would tell the jury that she "did not plead guilty to the mortgage fraud" when she testified. ECF No. 202-1 ¶ 2.

These statements are contradicted by the testimony of Abboud's lawyers, neither of whom remember her disagreeing with their strategy of conceding guilt to the bank fraud counts. ECF No. 223 at 51–53, 67–68. Indeed, Bernstein remembers Abboud expressly agreeing to concede guilt on those counts. *Id.* at 67–68. I thus do not credit Abboud's statements describing her objections to the bank fraud concession. But even if these statements were true, a couple conversations where Abboud questioned her attorneys' strategy of admitting to bank fraud on one day of a three-week-long trial would not amount to an "intransigent objection to that admission." *McCoy*, 138 S. Ct. at 1510.

The record also shows that, despite Abboud's alleged doubts about her attorneys' strategy of conceding guilt to bank fraud, she tacitly abided by this strategy. Abboud's lawyers made it clear before the trial even began that they were conceding guilt to these counts. ECF No. 135 at 4–5; Trial Tr. at 5. Indeed, Abboud's lawyers, with Abboud seated next to them, twice informed me outside the jury's presence that they would concede guilt to the bank fraud counts. Trial Tr. at 5, 1058; *see* ECF No. 222 at 8–10. And yet Abboud did not object. *See id.* Instead, she waited

12

until after summations, when her guilt had finally been expressly conceded to the jury, to raise her objection with me. *See* ECF No. 145. These are not the actions of a defendant who is "adamantly insist[ing] on maintaining [her] factual innocence." *McCoy*, 138 S. Ct. at 1510. They are the actions of a defendant who may not be entirely onboard with conceding guilt but is willing to wait and see how the strategy plays out. But "disagreement colored by acquiescence" does not amount to "intransigent objection." *Dean*, 93 F.3d at 62; *McCoy*, 138 S. Ct. at 1510. Because Abboud has failed to show that her attorneys overrode any express objection she had to conceding the bank fraud counts, she cannot secure a new trial on the basis that her Sixth Amendment right to maintain her innocence was violated.[2]

## II. Abboud's Right to Testify

Abboud also argues for a new trial on the basis that her attorneys violated her right to testify on her own behalf. "[A] defendant in a criminal case has the right to take the witness stand and to testify in . . . her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). The defendant's right to testify is a personal right that is "waivable only by the defendant [her]self regardless of tactical considerations." *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997). It is defense counsel's responsibility

---

[2] Abboud's convictions on the bank fraud counts have had little effect on Abboud's Guidelines calculation in light of her convictions on the other counts. Without the bank fraud counts, Abboud's offense level would be reduced only one level, changing her Guidelines range from 63 to 78 months to 57 to 71 months. *See* ECF No. 228. Thus, even if I were to dismiss these counts, the effect on Abboud's ultimate sentence would be negligible.

to advise the defendant of her right to testify. *Id.* at 79; *see United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (en banc). "Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Brown*, 124 F.3d at 79. Indeed, if the defendant wishes to testify, counsel cannot "overrid[e]" that decision. *Id.*

Abboud does not allege that her attorneys failed to inform her of her right to decide whether to testify. *See* ECF No. 223 at 34–36. Instead, she alleges that her attorneys informed her of her rights but then coerced her into not testifying by telling her that testifying would be "legal suicide." *Id.* When she continued to stay firm in her decision to testify, she alleges that her attorneys misled her with the promise "that in the end the judge w[ould] ask [her] if [she] want[ed] to testify." *Id.* at 25. She thus did not assert her right to testify until after summations because she was still "[w]aiting for the judge to ask [her]." *Id.* at 37.

"[S]ilence alone cannot support an inference" that the defendant has waived her right to testify. *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001). If Abboud's "will was overborne by [her] counsel," her right to testify could still have been violated even though she did not request to testify until it was too late. *Dean*,

93 F.3d at 62 (quoting *Teague*, 953 F.2d at 1535). But I do not credit Abboud's "highly self-serving" testimony. *Chang*, 250 F.3d at 86. Instead, I credit the testimony of both of her attorneys that they advised Abboud the weekend before the conclusion of the trial that she should not testify and that, while this conversation was fraught, Abboud ultimately agreed with them. ECF No. 223 at 55–56, 73–74. This testimony is supported by the email Bernstein sent to the United States Attorney with "a rough chart of the chances of [] Abboud testifying," tracking how Abboud had changed her mind from wanting to testify to deciding not to testify. *Id.* at 57–59.

Based on this chart—which directly contradicts Abboud's testimony that she had never changed her mind about testifying but had instead "insist[ed] no matter what they sa[id]" that she "want[ed] to testify" (*id.* at 27)—it was reasonable for Abboud's attorneys to assume that she would have informed them of her wish to testify before they rested her case if she had actually wished to take the stand. *See id.* at 59, 76–77; *see also Teague*, 953 F.2d at 1535 ("[A] review of ineffective assistance of counsel claims must be made from the perspective of defense counsel, taking into account all circumstances of the case as they were known to counsel *at the time of the representation*.") (italics in original). Yet Abboud waited through two witnesses testifying, through my asking her attorneys whether there would be any further witnesses, through the reading of stipulations, through an-hour-and-ten-minute lunch recess, through her attorneys officially resting her case, and through

the Assistant United States Attorney's summation before finally telling one of her attorneys that she wanted to testify. Trial Tr. at 1072–1231; ECF No. 223 at 77–79. These are not the actions of a defendant who has firmly decided to testify. *See Teague*, 953 F.3d at 1535. I thus find that Abboud's will to testify was not "overborne" by her attorneys but that she instead changed her mind about testifying—as she had multiple times over the course of the trial—after the conclusion of her case. *Id.; see* Trial Tr. at 473, 721, 947–48.

     Abboud is a graduate of Cairo University, has a "business certificate" from New York University, and has completed courses at Harvard Business School. ECF No. 223 at 11–12. As executive director of Human First, she oversaw a staff of almost 500 employees and lobbied elected officials on behalf of her constituents. *Id.* at 12–13. She has been a party to multiple lawsuits prior to this one. *Id.* at 13–14. Indeed, she had been a defendant in a tax trial in New York state court for crimes involving the same conduct that was at issue in this case. *Id.* at 14–16. Abboud's level of education and her experience with the justice system makes it even more implausible that she believed that her only option to assert her right to testify was to write a letter to me after summations had concluded. Because Abboud could have

easily informed me or her attorneys of her wish to testify before the defense rested but chose not to, her right to testify was not violated.[3]

## CONCLUSION

Abboud's motion for a new trial is DENIED.

**SO ORDERED.**

*Edward R. Korman*
Edward R. Korman
United States District Judge

Brooklyn, New York
August 23, 2022

---

[3] Even if Abboud's attorneys' mistaken advice that the judge would inquire as to whether she would testify were somehow responsible for Abboud not taking the stand (which I do not believe it was), Abboud cannot possibly show prejudice. *See Brown*, 124 F.3d at 79, n.2 ("[W]e note that although a trial judge is *permitted* to conduct such an inquiry [into a defendant's decision whether or not to testify] even when exceptional circumstances are not present, such colloquy will generally be inadvisable."). To maintain a claim that defense counsel did not discharge his duty to adequately inform the defendant of her right to testify (which is not alleged here), "the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 80 (quoting *Strickland v. Washington*, 466 U.S. 688, 694 (1984)). Abboud has not provided a summary of what she would have said had she testified or even alleged that her failure to testify prejudiced her defense. *See* ECF 202 at 13–19; ECF 224 at 21–29.