

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RTP/FTB
F. #2016R00577

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 13, 2022

<u>By ECF and Email</u>

The Honorable Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

   Re: <u>United States v. Wafa Abboud</u>
     <u>Criminal Docket No. 16-396 (S-1) (ERK)</u>

Dear Judge Korman:

  The government respectfully submits this letter in advance of the sentencing hearing for the defendant Wafa Abboud, which is currently scheduled for October 19, 2022. For the reasons stated below, the government respectfully submits that a sentence of imprisonment within the advisory range of 63 to 78 months under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is sufficient, but not greater than necessary, to serve the objectives of sentencing, as set forth in 18 U.S.C. § 3553.

 I. Factual and Procedural Background

  On July 9, 2019, after a seven-day trial, a jury convicted the defendant on all counts in which she was named in the superseding indictment.  Specifically, the defendant was convicted of two counts of embezzlement, in violation of 18 U.S.C. § 666 (Counts Two and Four); two counts of conspiracy to commit embezzlement, in violation of 18 U.S.C. § 371 (Counts One and Three); one count of bank fraud, in violation of 18 U.S.C. § 1344 (Count Six); one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count Five); and one count of money laundering, in violation of 18 U.S.C. § 1957 (Count Seven).  (ECF No. 159).  The defendant had originally been arrested on a complaint in June 2016 and has remained released on a bond throughout the pendency of the case.  (ECF No. 9).

  As proven at trial and detailed in the Presentence Investigation Report prepared by the U.S. Probation Department ("Probation") dated June 25, 2020 (the "PSR"), the defendant was the Chief Executive Officer ("CEO") or Executive Director of Human

First, Inc. ("Human First") from 2011 to 2016. (PSR ¶ 15; July 22, 2021 PSR Add. at 1). In either capacity, the defendant controlled the disbursement of Human First funds. (PSR ¶ 15). Human First was a not-for-profit corporation that had entered into contracts with the New York State Office for People with Developmental Disabilities ("OPWDD") to provide services to individuals with autism and other developmental disabilities. (Id. ¶¶ 12-13). The funds provided to Human First by OPWDD consisted in significant part of money from the Medicaid program, which is jointly funded by the federal government and New York State. (Id. at ¶ 13). Human First, at the defendant's direction, used these funds in part to purchase and renovate a number of residential properties between 2013 and 2015 that were intended to serve as homes and centers for the provision of rehabilitation services to developmentally disabled beneficiaries. (Id.).

The trial evidence showed that the defendant entered into two different conspiracies designed to further embezzlement schemes that she created to divert Human First funds to her own personal use. In the first scheme, the defendant conspired with Marcelle Bailey,[1] a consultant whose company, MPB Management, was paid approximately $900,000 in "fees" during the time period 2011 to 2015. (PSR ¶¶ 16, 20). Per an agreement with the defendant, Bailey placed a substantial portion of these funds at the disposal of the defendant by depositing them into bank accounts over which the defendant exercised effective control. (Id. at 21). The defendant used this money to fund a lavish lifestyle, including, among other things resort vacations (both within the United States and overseas), elective cosmetic surgeries, and expensive meals at high-end restaurants. The defendant also withdrew significant amounts of money in cash, wired money overseas, and used some of the funds to pay for renovations on her house. (Id.). The PSR calculates the loss to Human First from the MPB Management scheme at $998,000, and the government submits that this figure is correct for the reasons set forth in its response to the defendant's objections to the PSR, which are attached hereto as Exhibit 1 and incorporated by reference.[2]

The second embezzlement conspiracy entered into by the defendant consisted of her using corrupt contractors to submit inflated invoices for renovation work purportedly done at Human First properties. The defendant used these inflated invoices to issue Human First checks in amounts greater than necessary to fund the renovation work, with the excess

---

[1] Bailey pleaded guilty to four counts of the superseding indictment in December 2017 (embezzlement, bank fraud, and conspiracies to commit those crimes) and was sentenced by this Court in August 2021 to a term of incarceration of 33 months. (ECF Nos. 198-99).

[2] As noted in the government's response to the defendant's objections, the $998,000 figure is conservative since it does not include payments by Human First for the defendant to, among other things, lease expensive cars. Nor does it account for the unilateral, wholly unauthorized salary increase that the defendant gave herself in 2014 as part of the effort to secure the mortgage to purchase her new home, as discussed in greater detail, infra.

2

payments eventually routed back to her own personal bank accounts. The details of two such overpayments were recounted in the government's submission in opposition to the defendant's motion for a new trial (ECF No. 222 at 5-6) and in the PSR at paragraphs 28-29. In total, the defendant and her co-conspirators stole $417,000 from Human First using this method. (Second Addendum to PSR at ¶ 61).

Interwoven with the defendant's embezzlement schemes was the fraud the defendant perpetrated on New Penn Financial ("New Penn") to obtain the mortgage loan necessary for her to acquire her Merrick Avenue residence. As detailed in the government's opposition to the defendant's motion for a new trial, the defendant made multiple intentional and material misstatements and omissions to New Penn in connection with obtaining the mortgage. (ECF No. 222 at 4-7). These misstatements including, among others, deliberately concealing the existence of a second mortgage that the defendant had obtained from the seller of the residence, misrepresenting stolen funds from Human First as "gifts" that the defendant had received from co-conspirators (complete with fraudulent "gift letters"), and the creation of a wholly fictitious "settlement" payment from a contractor to the defendant (complete with forged settlement agreement) that was used to justify the payment of embezzled Human First funds from the defendant to herself (after routing the money through various sham accounts in the names of corrupt contractors). (Id.; PSR ¶¶ 22-24).

In connection with the bank fraud, the defendant also committed further embezzlement by directing an employee to increase her salary, so as to satisfy concerns about her debt-to-income ratio that had been raised by New Penn. (ECF No. 222 at 6 & n. 5). This increased salary was not approved by Human First's Board of Directors, but the defendant directed that it be given anyway. Her co-conspirator Marcelle Bailey assisted in the theft, drafting a letter purportedly justifying the raise, knowing full well that it was simply another form of embezzlement. (GX 304 at 508).

II.     The Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the Second Addendum to the Presentence Report, dated August 19, 2022 (the "Second Addendum"). The Second Addendum calculated a total offense level of 26, which corresponds to an advisory Guidelines range of imprisonment of 63-78 months (there is no dispute that the defendant falls within Criminal History Category I).[3] The total offense level was driven in

---

[3] To the extent there is any dispute, the government submits that the Guidelines enhancements for leadership role (plus two levels) and abuse of a position of trust (plus two levels) are appropriately included in the calculation. The trial evidence clearly established that the defendant was the leader and organizer of both of the core embezzlement schemes at issue, and the two-level increase (as opposed to a four-level increase) accurately reflects her role in the offense conduct. Similarly, the evidence established that the defendant enjoyed near total discretion in controlling the disbursement of Human First's funds, and, as such, the application of the abuse-of-a-position-of-trust enhancement squarely applies.

significant part by the losses to Human First caused by the defendant's criminal conduct, which the Second Addendum quantified as totaling $1,415,000 ($998,000 from the MPB Management embezzlement scheme and $417,000 from the corrupt-contractor scheme).

III. Discussion

The government respectfully submits that a Guidelines sentence is warranted here. The defendant's crimes were both numerous and serious. The defendant set about methodically to siphon away significant funds from the not-for-profit organization that she was privileged to lead, diverting the funds from their important purpose and toward her own wish fulfillment. This was no momentary lapse in judgment. The defendant's criminal conduct spanned the course of years. Nor was it the product of desperate circumstance. The defendant was blessed to earn a very good living while running Human First; the defendant betrayed the organization's confidence in her by treating its bank accounts as though they were her own. The defendant has neither expressed the slightest remorse nor accepted an ounce of responsibility for her conduct.

The trial evidence showed that over the years, she came to dominate the employees of Human First, brooking no dissent, even as she systematically deceived – with the assistance of Marcelle Bailey – the organization's captive Board of Directors that Abboud had handpicked. While the board was comprised of well-meaning individuals, those had, as Abboud well knew, no prior experience comparable to overseeing an organization that received more than $20 million a year in Medicaid funding. Abboud placed them on the board precisely because she knew that they trusted her without reservation, and she exploited that unequivocal trust for her own selfish gain.

As set forth in the government's sentencing submission for Marcelle Bailey, the defendant's conduct can be situated within a larger web of sinister activity involving several not-for-profit agencies linked by the activities of multiple individuals, including the defendant, the defendant's sister, Bailey, and a convicted felon, who had previously served as the executive director of two of the agencies. (ECF No. 196 at 2-3 & n.2). This latter individual – after he had been convicted and his guilty plea publicized in local New York media, including on the front page of the web edition of the New York Daily News – received Human First funds at the express direction of the defendant. Specifically, Abboud paid this individual hundreds of thousands of dollars in "consulting fees," knowing full well that he had just pleaded guilty to stealing hundreds of thousands of dollars from the not-for-profit that he led. When a Human First employee, someone who had worked with and revered Abboud for years, raised these payments with the defendant, the evidence shows that the employee was subsequently terminated by the defendant – the government submits in retaliation for questioning the defendant's unilateral decision on how to expend Human First's funds. (Trial Tr. 610-627).

Under these circumstances, the need for deterrence – both specific and general – also argues in favor of a Guidelines sentence. It is not clear that a felony conviction will prevent the defendant from seeking to serve in the future, with the assistance of either co-

conspirators or other associates, as some form of consultant for a not-for-profit agency and continuing to engage in, or facilitate, similar conduct.  Indeed, as noted above, the defendant has steadfastly disclaimed all responsibility for her conduct and, throughout the progress of this case, continued to insist that she is innocent.  That the defendant refuses to acknowledge that she stole from Human First should trouble the Court and is a significant factor in favor of imposing a significant incarceratory sentence.  So is the defendant's course of deception: the opening of sham bank accounts, the creation of phony invoices, and the lies to Board members and employees who, by all accounts, were consistently ready to give her the benefit of the doubt.  In addition, the amount of control that individuals who are similarly situated to the defendant enjoy at not-for-profit agencies that receive government funding is extensive, which makes embezzlement difficult to detect – there are few effective checks on their power.  A Guidelines sentence will send a clear message that when criminal conduct is uncovered, the consequences will be severe – a prospect that might give pause to those who are entrusted with millions of dollars in government funding contemplating similar crimes in the future.

## Conclusion

For the reasons stated above, the government respectfully requests that the Court impose a sentence within the advisory Guidelines range of 63-78 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ F. Turner Buford
Robert T. Polemeni
F. Turner Buford
Assistant U.S. Attorneys
(718) 254-7000

cc:   Sarah Kunstler, Esq. (by Email and ECF)